UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee,<br><br>Plaintiffs,<br><br>v.<br><br>TELEGRAPH PAVING COMPANY, INC.,<br><br>Defendant. | 09 C 7801<br><br>Judge George M. Marovich |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund (the "Fund") and Howard McDougall, Trustee, filed a complaint against Telegraph Paving Company, Inc. ("Telegraph"). Plaintiffs seek an order requiring defendant to pay interim withdrawal liability (as well as liquidated damages and interest) pending the outcome of arbitration. Plaintiffs have moved for summary judgment. For the reasons set forth below, the Court grants the motion for summary judgment.

### I.  Background

Before the Court discusses the undisputed facts, it reiterates the importance of complying with Local Rule 56.1. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the

opportunity to show that such facts are disputed. Here, for example, Telegraph failed to include a statement of facts. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, however, does not absolve a party of its initial burden of putting forth admissible evidence to support its facts. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The following facts are undisputed unless otherwise noted.

The plaintiff Fund is a multiemployer pension plan within the meaning of the Employee Retirement Income Security Act ("ERISA"). Defendant Telegraph is a corporation that signed a collective bargaining agreement that required it to make contributions to the Fund for some of its employees. As of March 31, 2007, Telegraph stopped making contributions to the Fund.

March of 2007 was not the first time the Fund and Telegraph had a dispute over contributions. In December 2004, the Fund determined that Telegraph had effected a partial withdrawal. The Fund sent Telegraph a notice and demand for payment. When Telegraph refused to pay, the Fund filed suit and, after obtaining a judgment, used post-judgment garnishment proceedings to collect the amount Telegraph owed.

When, in March of 2007, Telegraph stopped making contributions, the Fund investigated. The Fund asked Telegraph to complete a Statement of Business Affairs. John Wykes, Telegraph's President, signed the Statement of Business Affairs under oath. With respect to the question of why Telegraph had stopped making contributions, Telegraph checked the box for

"Last covered employee retired, quit or laid off." Telegraph added, "Our sales are down, there is no need to hire full time Teamsters anymore." Among other things, Telegraph's President also stated that he was planning to close the business because he was out of money and owed more than $250,000.00. Based on this information, the Fund concluded that Telegraph had effected a complete withdrawal from the Fund.

The Fund determined Telegraph's withdrawal liability, which it calculated at $214,158.38. The Fund also determined that there was a substantial likelihood that Telegraph would be not able to pay the withdrawal liability based on the facts that: (1) Telegraph was planning to cease operations; and (2) years earlier, when the Fund found Telegraph to be liable for a partial withdrawal, Telegraph had failed to pay until the Fund obtained a judgment. The Fund has proffered rules, which set out the events that will lead the Fund to conclude that an employer is unable to pay, and those events include the employer's insolvency, "failure or inability to pay its debts as they become due," bankruptcy, and "any other event or circumstance which in the judgment of the Trustees materially impairs the Employer's credit worthiness or the Employer's ability to pay its withdrawal liability when due." The Fund determined that there was a substantial likelihood that Telegraph would not be able to pay its withdrawal liability and, therefore, accelerated the withdrawal liability, which is to say it decided to require Telegraph to pay the entire amount right away instead of issuing Telegraph a schedule of payments.

On March 25, 2009, Telegraph received from the Fund a notice and demand for payment of the 2007 withdrawal liability. In the notice, the Fund did not provide Telegraph a payment schedule. Instead, the Fund informed Telegraph that it needed to make a lump sum payment of $214,158.38.

On May 20, 2009, Telegraph requested a review. The Fund's Board of Trustees considered and denied the request for review. On November 11, 2009, Telegraph initiated arbitration, which is still pending. Telegraph has not paid any of its withdrawal liability.

## II. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

"The Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) requires a firm that withdraws from a multiemployer pension trust to cover its share of any unfunded pension obligations. 29 U.S.C. § 1381." *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.* 935 F.2d 114, 116 (7th Cir. 1991). Under the system set out by the amendments, the pension fund, in order to collect the

withdrawal liability, must first determine the amount and then provide the employer notice and a demand for payment. *Central States SE and SW Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1015 (7th Cir. 2001). "If the employer and the fund do not agree on the employer's obligation, they must arbitrate. While the arbitration proceeds, the employer must either pay the whole sum or make periodic payments in an amount determined by the trustees. 29 U.S.C. §§ 1399(c)(2), 1401(d). If the employer does not pay the sums demanded, the trust may file a civil action in federal court to collect. 29 U.S.C. § 1451(a)(1)." *Central Transport*, 935 F.2d at 116. Requiring the employer to pay withdrawal liability while arbitration is still pending "serves the dual purpose of reducing the risk that an employer will not pay and of encouraging speedy adjudication by requiring immediate arbitration before the courts become involved in the merits of the dispute." *Bomar Nat'l*, 253 F.3d at 1015. This Court's job is merely to decide who holds the potential withdrawal liability while the parties await the decision of the arbitrator(s).

*Acceleration*

Ordinarily, while arbitration is pending, the employer pays interim withdrawal liability according to the schedule provided by the trustees of the pension fund. *Central States, SE and SW Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 876 (7th Cir. 1998) ("ERISA makes it clear that an employer withdrawing from a multiemployer pension fund must pay withdrawal liability to the Fund, and our cases make it equally clear that interim payments must be made pending arbitration."). Under two circumstances (which the statute calls "defaults"), the Fund is allowed to accelerate the interim withdrawal and require the pension fund to pay the entire withdrawal liability, rather than just the scheduled payments. *See* 29 U.S.C. § 1399(c)(5) ("In the event of a default, a plan sponsor may require immediate payment of the outstanding

amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.") The statute defines default as:

(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and

(B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. § 1399(c)(5)(A)-(B).

In this case, the Fund did not provide a schedule of interim payments in its notice and demand for payment, as is required by 29 U.S.C. § 1399(b)(1)(A)(ii). Instead, the Fund determined that a "default" occurred before it ever sent the notice and demand for payment. Thus, by the time the Fund sent the notice and demand for payment, it had already accelerated the payment. When it sent the notice and demand, the Fund demanded that Telegraph pay the entire withdrawal liability. Although Telegraph points out the lack of a payment schedule, it does not argue that the notice and demand was void due to the Fund's failure to include a payment schedule.

Telegraph argues, instead, that it cannot be required by the Fund to pay the accelerated interim withdrawal liability because Telegraph has demanded arbitration. Telegraph's argument is based on a federal regulation, which states, in relevant part:

The following rules shall apply with respect to the obligation to make withdrawal payments during the period for plan review and arbitration and with respect to the failure to make such payments:

> (1) A *default as a result of failure to make any payments* shall not occur until the 61ˢᵗ day after the last of–
>
> \* \* \*
>
> (iii) If arbitration is timely initiated either by the plan, the employer or both, issuance of the arbitrator's decision.

29 C.F.R. § 4219.31(c)(1)(iii) (emphasis added). Based on this regulation, the Seventh Circuit has concluded that once an employer has requested arbitration, the pension fund cannot accelerate the payment (though the employer must still pay according to the payment schedule) due to a failure to pay. *Chicago Truck Drivers, Helpers and Warehouse Union (Ind.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 534 (7th Cir. 1997). Telegraph argues that this means that the Fund was not allowed to accelerate the balance.

The problem with Telegraph's argument is that the statutory provision relied upon by the Fund when it accelerated the payment is not the statutory provision affected by the regulation Telegraph cites. When the Fund accelerated the payment, it relied on 29 U.S.C. § 1399(c)(5)(B), which allows acceleration due to "any other event defined in the rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." The Fund did not rely on § 1399(c)(5)(A), which is default by failure to make payments. The regulation, by its terms, applies only to "default as a result of failure to make any payments," i.e., 29 U.S.C. § 1399(c)(5)(A). The Court concludes that 29 C.F.R. § 4219.31(c)(1)(iii) does not prevent the Fund from accelerating the interim withdrawal liability based on 29 U.S.C. § 1399(c)(5)(B).

Still, the Court must consider whether the Fund has established, as a matter of law, that it was entitled to accelerate the payment under § 1399(c)(5)(B). As noted above, the MPPAA

allows the fund to accelerate the withdrawal liability payment in the event of default, and default includes "any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." 29 U.S.C. § 1399(c)(5)(B). The Fund, in turn, has set forth rules that explain when the trustees will conclude that the employer is unlikely to pay. They are:

> (A) the Employer's insolvency, or any assignment by the Employer for the benefit of creditors, or the Employer's calling of a meeting of creditors for the purpose of offering a composition or extension to such creditors . . . , or
>
> (B) the Employer's failure or inability to pay its debts as they become due;
>
>       * * *
>
> (E) any other event or circumstance which in the judgment of the Trustees materially impairs the Employer's credit worthiness or the Employer's ability to pay its withdrawal when due.

In this case, the Fund has put forth evidence of two reasons why it concluded that a substantial likelihood existed that Telegraph would not be able to pay its withdrawal liability, although the first suffices. With respect to the Fund's default rule part (B), the Fund points out that in 2004, Telegraph failed to pay interim partial withdrawal liability when the Fund issued a notice and demand for payment. The Fund received payment only after it obtained a judgment and initiated post-judgment garnishment proceedings. Telegraph does not dispute these facts. Accordingly, the Court concludes that the Fund has put forth undisputed evidence that Telegraph has failed to pay a debt when due, which–pursuant to the Fund's rules–constitutes a default under § 1399(c)(5)(B). For these reasons, the Court concludes that the Fund was entitled to accelerate the interim withdrawal payment.

Telegraph paving must pay interim withdrawal liability to the Fund in the amount of $214,158.38, pending the result of the arbitration.

The Court appreciates that the MPPAA gives significant power to a pension fund to squeeze money out of an employer it unilaterally deems to have effected a complete withdrawal before an arbitrator has considered whether or not the pension has actually completely withdrawn. Congress chose this for a reason. If the employer holds the funds during arbitration, the pension faces the risk that the employer will go out of business or distribute its assets. If the trust holds the funds, the employer faces very little risk that the money will not be returned, because the pension trusts are "solvent, diversified, regulated institutions." *See Central Transport*, 935 F.2d at 118-119.

### *Colorable claim*

Finally, Telegraph paving argues that the Court should not require it to make interim withdrawal liability payments because the Fund's claim is not colorable.

Although MPPAA is a "pay now, dispute later" system, a court "may excuse interim payments pending arbitration if the employer can show both that the pension fund lacks a colorable claim and that the employer will suffer severe financial hardship if compelled to make interim payments." *Central States, SE and SW Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1016 (7th Cir. 2001). This is to prevent pension funds from using MPPAA as a means of extortion. The Court concludes that the Fund's claim is colorable. According to the undisputed facts, when the Fund asked Telegraph why it had stopped making contributions, Telegraph's President, under oath, checked the box for "Last covered employee retired, quit or laid off." Telegraph added, "Our sales are down, there is no need to hire full time Teamsters anymore." Among other things, Telegraph's President also stated that he was planning to close

the business because he was out of money and owed more than $250,000.00. Telegraph argues that its President made a mistake, which may be the case. The merits are for the arbitrator. The Fund has put forth enough to show that its claim is colorable.

### *Relief*

The failure of an employer to pay interim withdrawal liability is treated as a failure to make delinquent contributions such that the employer faces the penalties set out in 29 U.S.C. § 1132(g). *See* 29 U.S.C. § 1451(b). Thus, in addition to the $214,158.38 in interim withdrawal liability, the Fund is entitled to interest, liquidated damages (in an amount that is the greater of interest or 20 percent of the unpaid interim withdrawal liability), reasonable attorneys' fee and costs.

The appropriate rate for prejudgment interest is the prime rate, i.e., 3.25%. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) (there being no statutory rate for prejudgment interest, the Seventh Circuit "suggests that district judges use the prime rate for fixing prejudgment interest.").[1] Accordingly, the Fund is entitled to interest in the amount of $10,076.75. In addition, the Fund is entitled to liquidated damages in the amount of $42,831.67. Finally, the Fund is entitled to reasonable attorneys' fees and costs.

---

[1] The Fund has not convinced this Court that Telegraph obligated itself to pay a higher interest rate.

**IV.	Conclusion**

For the reasons set forth above, the Court grants the motion for summary judgment.

ENTER:

George M. Marovich
United States District Judge

DATED: August 31, 2010